Good afternoon. Have a seat, please. Thank you. Mary? Case number 13-0132, People v. Carlton Nixon. Could we have the attorneys who are going to present today approach the podium and identify yourselves for us, please? Hello, Your Honors. My name is Catherine Donovo from the Office of the State Appellate Defender on behalf of Carlton Nixon. Assistant State's Attorney Brian Hardy is on behalf of the people of the state of Illinois. Thank you. All right, then. We'll start out with 15 minutes aside, and the appellant may reserve time for rebuttal if you wish, and you may proceed. Thank you very much. May it please the Court, I would like to reserve a few minutes for rebuttal. Very well. At Carlton Nixon's trial in the year 2012 for a sexual assault that took place in 1999, the crux of his defense was that the key suspect in 1999 was not Carlton Nixon, but rather a known sex offender named Eric Linen whom the victim picked out of a photo array a few weeks after the assault. The police investigating the case asked the state crime lab to run a DNA comparison between Linen and a profile developed from the sexual assault kit, but there is no evidence that such a comparison ever took place. Let me ask you a question. Wasn't there a DNA test that showed a match at all 13 loci? With Nixon, there was some DNA testing later, and that was presented at trial. Are you telling us that that DNA wasn't correct? Well, there was some evidence, clearly, of Nixon's guilt, but the prejudice in this case is that there was also evidence of Eric Linen's guilt, and it was completely undermined by the state's ability to introduce this one-page computer printout and let it stand for an inference that all of this extensive testing took place as far as Eric Linen was concerned as well. There was testimony that there was, are you saying someone suggested that his DNA was tested? Eric Linen? Yes. Well, yes, that is the problem, is that the state was allowed to introduce this sheet of paper, and an employee at the crime lab testified that this indicated that his DNA was added to this database in 1999, and he also testified that anything entered into the database is continuously run against other samples that are in the database. Oh, he did state that? He did. So effectively advising the jury that you can feel okay about ruling out Eric Linen because the state did its job and tested his DNA when he was the main suspect, and that's why the investigation fell away from him, even though what we know from all the pretrial litigation where there was a parade of police officers and crime lab employees, no one could recall why they gave up on the investigation into Eric Linen. But wasn't there cross-examination that she identified this person? Isn't there evidence in the record that suggested that he jumped out at her, the witness, the victim, said that? She did concede that? She said that about Eric Linen. Yes. And wasn't there further cross-examination that that piece of paper didn't mean that any test had really ever been conducted to rule them out? Well, that was established pretrial, but not at trial. Not during cross-examination of any witness. It wasn't ever asked of a single witness whether or not the test had actually been done to rule them out. You're saying no one ever asked that question? No. What was elicited from the testimony of Brian Shoon was that his DNA profile was entered into this database. Right. Didn't the defense attorney get out from a number of witnesses this fact that that doesn't mean that his DNA was ever compared or tested in this case? Well, of the witnesses who testified pretrial, most of them were not presented at trial. There was one police officer who testified, and he said that he recalled requesting a comparison be run, but he could not recall ever receiving the results. Okay. So there was evidence that there were never any results ever? There was. It was probably inconclusive based on that testimony, but then it was completely undercut when the state was allowed to introduce the computer printout along with the testimony about its significance. Didn't Brian Shoon say that he'd actually never seen a case in his entire history of where they had a 13th pass of the allele? I don't recall that part of his testimony. I'm sorry, that he had never seen a 13th pass match? Yeah, that he had never been involved in any case where there were actually all 13 matching. He didn't say anything like that? I don't recall that part of the record. Did the defendant ever contend that he did do it? Pardon me? Did the defendant ever contend that he's not the man? He did not testify at trial. He did not present evidence in his defense, which was his right. He relied on the state's burden to prove him guilty beyond a reasonable doubt. There was evidence against him. He talked about he was identified in a photo array, but so was Eric Leinen. He had a prior attempt sexual assault. The jury was told that, though, right? They were told what, Your Honor? Wasn't the jury told about Eric Leinen? They were told about Eric Leinen, that he had been identified in a photo array, but the significance of that was completely undercut by the state's use of this computer printout. Well, what's your problem with that printout? I mean, the import of that testimony, my understanding is, isn't it, that his DNA profile is in the database and there was no hit, right? That's what the state used it to show, yes. Is that not correct for some reason? It's very hard to find it to be a reliable representation of that. After a year and a half of pretrial litigation, the state repeatedly insisted that they could not find any of the underlying information to support that Eric Leinen had ever been tested, that there was any profile for him anywhere. A search of CODIS, a search of the crime lab's own records, computer records, found nothing. They looked under his name, his date of birth, all the different case numbers associated with the case. But at some point, they found it, right? They did not. They found his name, and this printout was dated January 20, 2012. Well, how did they get his profile? That's a very good question. Well, thank you. There's no indication. It's a question that I can't answer that's not clear in the record because even after they produced this printout, the defense continued to request, how is this generated, where did this come from, what's the source of this information, where's the profile? They specifically asked for Eric Leinen's profile. And the state said there was nothing there. I'm sorry. Go ahead. That's it. Is this error subject to the harmless error rule? Well, yes, and we argue that there is some prejudice in this case, though, because of all of this evidence against Eric Leinen being the entire heart of the defense's case, and the state was able to use this one sheet of paper to make an end round around the fact that in the year and a half of pretrial proceedings, it insisted that Eric Leinen's DNA had never been tested. And there was never a request to test it, though. It was there once it was disclosed. A request to test Eric Leinen? Yes. The police requested it in 1999. Right. And there was no new request to actually do it by the defense in this case, once they realized that he was actually in the database somewhere. Well, for most of the time, the state was insisting that he was not in the database. Yes, I understand, but at some point it became apparent that he was. And the defense was asking for any additional information, asking for his profile so that they could understand why his profile did or did not match the profile from the sexual assault kit. Well, again, you're saying that this isn't harmless? Correct. And you're saying that the evidence – are you then saying the evidence was close or what? You don't contest the sufficiency of the evidence. No. You don't contest the evidence of other crimes. You don't contest the DNA evidence that was actually submitted and heard by the jury. So how can you say there was prejudice if you don't argue the evidence was weak or something? Because while standing alone, the evidence against Carlton Nixon was substantial, there was also a lot of evidence pointing to Eric Leinen that kind of mirrored it in a lot of ways. The two different photo array identifications, both having a history of sexual assault, and Leinen had actually been – he was flagged because he had recently been paroled into this neighborhood where the assault took place. And we have this DNA – Wasn't there a difference in her testimony? Didn't she clearly say that when she first saw his picture, it kind of jumped out at her as someone who might have been an offender? In her testimony, which was many years after this happened, and after she had also had a second photo array and been told that somebody in there was a DNA match, that was her recollection that it had been someone that it might have been. But that's – in the police reports that were contemporaneous with her identification, they do not describe it as being so tentative. So she wasn't ever given some kind of piece of paper saying that you don't have to pick someone out? For both of them? For the more recent – She was when she was told that she did not have to pick someone out, but she was also told that someone in that photo array was a DNA match. But she was also told you don't have to pick anybody out. She was. But I would also argue that the state's response, pre-trial to the defense request for additional information, information that would have been underlying this computer printout, just starkly exposes the failings of the crime lab's record-keeping, which is relevant to how we consider Carlton Nixon's DNA evidence. The fact that they were completely unable to provide any information about this one-page printout just diminishes the credibility of a lot of their records. And we've been talking a lot about whether this was harmless. I do also just want to point out that it is very clearly not – did not meet the foundational requirements of the business record exception, including some of these very more recent cases from this court, including Avdik, that show that we have additional requirements when we're relying on computer records. And we don't have any of that here. We don't know the source of the information. We don't know the method of recording. We don't know what kind of computer equipment and software was used in 1999, whether that was the same computer and software equipment in the intervening years between 1999 and 2012. We don't know who had access to this database, why suddenly in January 2012 Eric Lyman is in it, after many witnesses prior to then insisted that he was not. And we don't know if they're trustworthy and reliable. The state didn't make any effort to lay any of that out in Brian Shoon's testimony or otherwise. And this did not – this is not a trustworthy and reliable piece of evidence. But it was used to argue that Eric Lyman was in the CODIS database and had necessarily been run against a sample in this case and presumably not been a hit, but that was really nothing more than speculation. Well, did you guys do anything to determine whether this DNA evidence that they had on the defendant was not what it's supposed to be? Well, even Brian Shoon's testimony, and while I do cite all these astronomical odds of DNA matches, he did testify that it is possible for there to be somebody else who matches. And that's really the fact of the matter. Well, on DNA evidence, when 13 loci are found, I think the only thing that could change that is to look under the microscope and see that – have somebody else check that loci, because you're not contesting the sufficiency of the evidence here. No, we're not contesting the sufficiency of the evidence. And the sufficiency of the evidence seems to be overwhelming. If 13 loci are found, and you don't attack the loci, and you say, well, we don't know this, and we don't know that, and nobody knows everything, and the state proved their case through DNA evidence, and you did nothing to check out that evidence, and you want a new trial. Well, if that's the case, if that right there is the end of it, then they didn't need to contest Eric Linen's guilt with this flimsy piece of paper here. They didn't need to introduce it, but they did, and they just pretty much shut down the whole defense without ever having to actually produce any information that he was ruled out. There was definitely significant evidence against Eric Linen, and it should have been something for the jury to decide. Now, somebody could take his DNA evidence today and make determinations from it. Of Eric Linen? Yes. But you haven't done that, have you? No, we haven't done that. I mean, at this point, it's something that was done improperly at trial to the huge advantage of the state, to the huge detriment of the defense. The state got to have it both ways. They got to deny for a year and a half that there was anything about Eric Linen in the database, that there had never been any testing. The trial court mistakenly assumed that the Eric Linen investigation had dropped off because Nixon had been flying in CODIS, even though that didn't happen until six years later, and it disrupted the entire defense. May it please the Court Assistant State's Attorney, Brian Hodes, on behalf of the people of the State of Illinois. In this case, the trial court correctly exercised its discretion and admitted the CODIS status printout of Eric Linen as a business record. The foundation for a business record is what we have for foundation has been laid as a subject to the abuse of discretion standard, as are most things during a trial, most rulings, evidentiary rulings, and this is simply such a ruling no other standard need apply. In this case, the foundation required for this business record was that it be a memorandum or record of an act taking the regular course of business around or at the time of the event. Mr. Shoon, who was verified as an expert in DNA testing, testified to all these elements to establish its foundation. Let me ask you the same question that I asked counsel, and that is, where did this profile come from? Where did this profile come from, Linen's? If I understand the question correctly, I think it was just somebody types in to CODIS who can access the CODIS database information. Initially, how did this other suspect's DNA profile get into the CODIS system? How did they get it? Where did it come from? It was taken, I believe, in the early 90s when he was, this other suspect was convicted of things, and it wasn't transferred into the STR. That's where you get the time lag in this case. It wasn't transferred from the prior DNA means standard. Is that the gap from 1992 to 1999? Yes. So the state's position is that the way that Linen's profile got into the CODIS database is that he had previously been convicted of a crime for which the law requires that he give his DNA, and he gave his DNA and it went into the database. Yes, and it was translated, I guess, or put into the PCR-SCR format for that profile so that we could do the 13 loci testing until December 23, 1999. And this was something that the officers knew. If you look at the pretrial testimony, at least one of the detectives involved references that we're awaiting this translation, I guess you would call it, or conversion, so that we can run the CODIS search on Dalton Nixon. They also testified prior to trial, I'd like to point out, that when they don't get a hit back after they've requested one, that means that there was no hit. There's no hit. Yes. So you don't need this kind of affirmative notification there wasn't a hit. And I think part of the confusion the defendant is pointing out stems from the difference between Bocas Law comparisons where you actually compare head-to-head to profiles with simply running a check in a database. In this case, Lyman's, at least for purposes of this case, Lyman's DNA was never requested, and it was never tested against defendants. Excuse me, not defendants, the male profile in the case. Rather, the male profile in the case ran through and kept running through and didn't come up with a hit until defendants' DNA on 13 Loci, excuse me, until defendants was associated with it. And then they took defendants' buffel swab after they found him and back him up as a perfect match, at least what is referred to as a perfect match, meaning on all 13 Loci. So let me back up, I'm sorry. The foundation requirement they're suggesting is, should be bringing in all these additional requirements that exist for computer-generated records. However, those requirements did not apply because this was a computer-stored record. It was in a database. That distinction between computer-generated and computer-stored was first, at least first in Illinois, set forth by the Ombudsman Supreme Court in a case we set in our brief called Holowaca, which distinguished between computer-generated and computer-stored. It noted that computer-generated information is stuff that the computer, by operation on data or by directly receiving data, does something to, whereas computer-stored, which is what I believe we have in this case, which is just what's in the database. Sort of like what's in a filing cabinet. Somebody typed in what's in, is this person in CODIS, and what do you have on them? And it spit back, in response to that database query, that his 13 Loci profile, his STR profile, was completed, is the word they used, as of December 23rd of 1999 for Eric Lyman. Sorry if I can choose the names. Well, you know, I understand your position that the DNA is being stored in a database, but isn't the CODIS system also performing a process when you relate to the court and to the jury that this database is being stored, I'm sorry, that this profile is being stored in CODIS, and we put in the male profile that was recovered in this incident, and CODIS continually checks to see if there's a match, and there's never been a match. And so then aren't you drifting away from simple data storage into data analysis, and then don't you have to lay the foundation to show why CODIS works? There was no objection on those grounds when CODIS was described by two prior witnesses, at least that's my recollection of the testimony. I haven't gone over it recently. But two other witnesses were experts, testified, at least one of them talked about CODIS to the extent that she was allowed to, given the motion to eliminate, and how it worked, and set forth this procedure. So that's not something that came in with this document. But didn't you get to use the document for much more than what it really was? Yeah, the document was useful for more than that, but the question is did we lay foundation for the document, not what its use was in that sense, if I understand you correctly. Well, I think Judge Palmer was asking the question that if it's being used for more than simply a computer-generated document, and you argued it, basically to say that his DNA didn't match, didn't you? Like, aren't you using it without any foundation at all? But there was prior testimony, not only from this witness, but from others about how the database functioned and how it went through things. So that wasn't what the document, the document was just saying he was in the database, and that's all we used it for. How do you understand the harmless error-free rule in this case? Well, that's where I was heading next, but thank you, Your Honor, for getting me there. This document, she essentially conceded it made very little difference as to whether the defendant was guilty. The question is, with or without this evidence, was the error on this matter reasonable? And in this case, it clearly was. Well, you used a standard in your brief that says where the evidence is overwhelming. I'm sorry, the other evidence. Exclusive of Mr. O'Reilly. It's that no reasonable juror could have acquitted the defendant? I don't have what I wrote in front of me. I assume that's, is that the standard? What does that mean? It means that the evidence was overwhelming with or without this particular piece of evidence, so that any error in admitting it was harmless beyond a reasonable doubt. I'm talking about the actual meaning of the phrase, no reasonable juror could have acquitted him? Don't you think that's kind of steep? Have you met that? Yeah, I think we've met whatever the standard is in this case, because the witness, and this is something that she's underpinning, the witness identified the defendant from his photograph, and then she identified him in court without equivocation. And her testimony, and she identified him based on his face, which she says she saw twice when he attacked her. Her other testimony about what occurred that day was fortified effectively and substantiated by the other people she interacted with that day, as well as the physical evidence of her injury from being choked. In addition to that, we presented powerful other crimes evidence on, among other things, identity. Oh, okay. Here's the standard you cited. Evidentiary errors are harmless if properly admitted evidence is so overwhelming that no fair-minded juror could reasonably have voted to acquit. So your argument is that based on the properly admitted evidence, the DNA, her identification, the evidence of the other victim who testified, based on all of that. All of that was overwhelming. So that no fair-minded juror could reasonably have voted to acquit. Yeah. And I think the evidence showed that. The DNA evidence was that he matched on all 13 loci. That's the standard. And that was, the testimony was that he had never heard of or read about anyone, he being the, one of the DNA experts who testified. Well, what about if you added, because it's all properly admitted evidence, what if you add to that other evidence? The fact that the victim identified someone else at least initially and said, boy, he jumped out at me like he could have been the one. And then you have the detectives telling her, we've got the DNA match, look at these guys and see if you can pick one out. But you don't have to. Now, under those circumstances, are you saying the evidence was so overwhelming that no fair-minded juror could have voted to acquit him? The other evidence also included not just the, also included the DNA, then. No, I know. I get that, isn't there? Yeah, yeah, I know. I don't construe her testimony quite that severely. I mean, we don't know how the jury construed it, obviously. But she repeated when she identified Lyman's photograph initially, yes, she said he jumped out at me, but she also said that she told him twice, I'm not sure, I'm not sure. And the officers characterized that as their tentative identification in their notes. They didn't say anything otherwise. And Lyman wasn't a hit. The defendant was. Ultimately, the evidence in this case, even if you grant that there was an error, which I don't believe there was, was truly overwhelming. And a defendant cannot possibly meet this standard. So, first of all, I would respect the request of this Court to affirm the trial court's evidentiary ruling was correct, and also the defendant's conviction. Thank you. Thank you, Counselor. I'd just like to make a few points. First of all, I think the distinction that the State is trying to make between computer-stored and computer-generated data is a little bit misleading. And that is terminology that was used in a 30-year-old case. What we understand about computer-generated and computer-stored has changed very much.  It was talking about computer-generated information from a telephone tracer or a seismograph, something where there's no involvement from a human declarant, and it actually found that's not even hearsay. This is different. We're relying on all of this information that was entered and created by human declarants and then subsequently also run by computers. So it's hearsay. The State acknowledges it's hearsay, so the Holocaust case is kind of off point. And the State has also argued that the officers... But as you stated in your argument earlier, your client was a sex offender. Yes. Right. So it's not hard to figure out how his profile got in CODIS. It was entered in 2005, and when it was run in the system, there was an association made between the profile in CODIS and the profile in this case. And the State has tried to argue that the same thing happened with Eric Lyon and with the negative result and actually just argued that... Wait, what was entered in 2005? Carlton Nixon's profile. I'm sorry, I didn't phrase the question the right way, and I apologize. Lyndon's profile, it's not... You also admitted that Lyndon was a sex offender. Yes. Right, in your argument. Yes. In your previous argument, you said they were both sex offenders. Yes. So Lyndon was a sex offender. That's why he was targeted by the police. But that's also why he's in CODIS. Yes. Right? And so it's not hard to figure out how his profile got in CODIS. And so... If his profile was properly uploaded to CODIS, where is it? Why was the State unable to produce it over a year and a half of pretrial litigation, multiple police officers testifying, they don't recall ever getting results, the head of the section of the crime lab saying there's nothing there, I've searched multiple times, there's nothing there, and the State has argued that the police... Well, okay. You have just admitted to us that Lyndon was a sex offender. His profile is there. It's in CODIS. Now, it's true that they couldn't find it for a while for some ridiculous reason, for some human frailty or failing, however you want to say it, but that aside, you and I and everybody has to admit it was in CODIS because he's a sex offender. So if it's in CODIS, it's in CODIS. It was in there, as the State pointed out, in 1992 in the RFLP system, and there is a lot of speculation that it was properly converted and properly uploaded, but they can't produce any supporting documentation despite extensive efforts, extensive investigations. Well, is your argument with the document? Or is your argument with the conclusion that there was no hit, therefore it's not a match? The argument is that it's not a reliable and trustworthy representation of him actually being in CODIS. Yes, in the updated system where the profile from this case is, that it's such that they would have been run against each other. But isn't this issue about whether or not the trial judge abused his or her discretion by permitting that particular printout to be admitted as People's Exhibit Number 22? And doesn't what you're really saying go to the weight of that document and not really its admissibility because you really have challenged under the business records exception why the court shouldn't have permitted the document in the first place. And in light of what Justice Palmer has said about the fact that anytime someone has been convicted of a sex offence, their DNA actually does get into the system. And apparently in that case, though we have very little background information, that happened in 1992 in the RFLP system. And their state has not produced anything showing us that it was properly converted into the current system. And if the profile... Well, weren't you given the opportunity to cross-examine the foundation witness? I mean, the witness that was shoop, right? Shoon. Shoon, I'm sorry. Shoon. Shoon got up there and they took him through the foundational questions and he was subject to cross-examination? Well, the admissibility of the document was argued in a sidebar, and the state in that sidebar and then also during the questioning only discussed the traditional business records exceptions. There was nothing about the significance of this as a computer-generated document. Did Shoon testify at the trial? He did testify at trial. And he said that based on his experience, it was a record of it being entered in 1999 pursuant to usual business practices. But he said nothing about the computers, nothing about the software, nothing about any changes that may have happened between 1999 and 2012  But again, he was subject to cross-examination. And he said nothing about that. And I would also just like to point out that the state has argued that the police officers knew that Linen's profile needed to be converted from RFLP to STR, and that they knew that they had ordered it and they didn't need affirmative notification of a negative hit and of negative results, that there was no hit. But they did get that affirmative notification in the case of McNeil, Crawford, other suspects, as well as the victim's boyfriend. But they let this one slip through the cracks. And I think the fact that the state can't produce anything to support this one-page computer printout shows that we can't just rely on the absence of any affirmative notification to trust that the process went smoothly and let that stand in the place of actual data testing. And so we asked this court to find that the foundational requirements for computer-generated business records were not met in this case. There's just nothing but speculation as to the source of information in those records. If this document stands for the fact that there's a profile in there, where is it? And why couldn't the state produce it after a year and a half of being asked? So we would ask this court to reverse and remand for a new trial. All right. Well, thank you very much. We appreciate the excellent arguments today and the briefing, and we will take the matter under advisement. Court's adjourned.